UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No. 1:07CV184

| | |
|---|---|
| BORGWARNER INC., and BORGWARNER TURBO SYSTEMS INC., <br><br> Plaintiffs, <br><br> v. <br><br> HONEYWELL INTERNATIONAL, INC., <br><br> Defendant. | PLAINTIFFS' RESPONSE TO HONEYWELL INTERNATIONAL, INC.'S MOTION TO STAY PROCEEDING |

## I.    Introduction

From the moment Plaintiffs BorgWarner Inc. and BorgWarner Turbo Systems, Inc. (collectively, "BorgWarner") discovered that Honeywell was infringing the Patents-in-Suit, BorgWarner has taken reasonable and diligent steps to enforce its patent rights only to see Honeywell employ one delaying tactic after another to avoid resolution of this dispute. Indeed, in August 2005, BorgWarner approached Defendant Honeywell International, Inc. ("Honeywell") with an offer to license Honeywell under the Patents-in-Suit. Honeywell did not deny that it was using BorgWarner's patented design and manufacturing process for titanium compressor wheels but instead asserted that the BorgWarner patents were invalid. Over six months, Honeywell metered out information about its allegations, eventually referring BorgWarner to an article and vague, unsubstantiated claims

about alleged third party activities that Honeywell believed constituted prior art. Rather than firing off a lawsuit against Honeywell immediately, BorgWarner took Honeywell's allegations seriously and went to the trouble of contacting the third party and asking the third party to provide detailed information about its alleged prior art activities. Once the third party finally provided that information, it was clear that Honeywell's invalidity claims were unjustified, so BorgWarner then filed suit against Honeywell on May 25, 2007.

BorgWarner's diligent enforcement efforts have continued since the filing of this lawsuit, and BorgWarner has taken every effort to prosecute this case in a timely and efficient manner. For instance, BorgWarner has fully responded to Honeywell's written discovery, has produced the large majority of its documents to Honeywell, and has produced its experts on claim construction for deposition. BorgWarner's attempts to move this case forward have been met with nothing but resistance by Honeywell. Honeywell's meritless motion to transfer occupied the initial phase of this litigation and delayed the beginning of discovery. Now that discovery is well underway and the parties have completed briefing on claim construction (with a tentative Markman hearing date set for July 1st), Honeywell wants to put this litigation on ice for several years.

As shown in more detail in this opposition, Honeywell's reexamination is highly unlikely to provide any real judicial economy and will simply result in the parties coming back to this Court in a few years with the exact same dispute.

Tellingly, Honeywell chose to wait almost a year into this lawsuit (and almost three years since BorgWarner first contacted Honeywell about the patents-in-suit) to file its reexamination petition – even though the petition is largely based on the same prior art Honeywell asserted back in 2005, as well as additional prior art known to Honeywell as early as 2006. Honeywell also chose to pursue the type of reexamination proceeding least likely to streamline the future litigation of this action or narrow the issues in a future trial. In short, the nature and details of Honeywell's own reexamination application shows Honeywell's request for what it is – yet another delaying tactic. Consequently, this Court should deny Honeywell's Motion to Stay and allow this case to move forward on its current track.

## II.     Factual Background

BorgWarner Inc., through its subsidiary BorgWarner Turbo Systems Inc., designs, manufactures, and sells high performance turbochargers to the automotive and commercial vehicles and commercial engines industry. BorgWarner has been developing high-performance automotive components for over 100 years. Being at the forefront of technological innovation in the automotive industry, BorgWarner has amassed a patent portfolio consisting of approximately 3,800 active domestic and foreign patents and patent applications pending or under preparation.

To meet increasing performance demands imposed on turbochargers by tightening emissions regulations, two of BorgWarner's engineers, David Decker

and Stephen Roby, began work on a turbocharger with a titanium compressor wheel, as well as a method for cost effectively manufacturing the turbocharger and titanium compressor wheel using investment casting techniques. Messrs. Decker and Roby filed patent applications arising from this work, starting with the first application filed in June 2001. In 2003 and 2005 the United States Patent and Trademark Office issued patents on these inventions: U.S. Patent Nos. 6,663,347; 6,629,556; and 6,904,949 (collectively, "the Patents-in-Suit").[1] These three patents cover, respectively, a novel design for a cast titanium compressor wheel, a method for manufacturing such compressor wheels, and a completed turbocharger that incorporates the novel compressor wheel.

A.     **As Early as October 2005, Honeywell was Aware of the Prior Art that it Now Asserts in the Reexamination Proceedings.**

On August 11, 2005, BorgWarner sent a letter to Honeywell advising Honeywell of the relevance of two of the Patents-in-Suit to Cast Ti Wheels being sold by Honeywell, and offering a license to avoid any dispute on the matter. *See* CHEN DECL. (Doc. No. 61), at Ex. E (Doc. No. 61-6). Honeywell tersely responded to BorgWarner's offer in a letter of October 26, 2005 that was only a third of a page long. *See* CHEN DECL. (Doc. No. 61), at Ex. F (Doc. No. 61-7). In its response, Honeywell claimed to have reviewed BorgWarner's patents and discovered an important piece of prior art: SAE Technical Paper 790278 from

---

[1]   Investment cast titanium turbocharger compressor wheels embodied in the

1979 (hereinafter, the "SAE Article"). *Id.* Honeywell claimed that due to the SAE Article, and other alleged third party prior art activities, it believed that BorgWarner's patents were invalid. *Id.* Despite its discovery of this supposed prior art, Honeywell did not file a request for reexamination of BorgWarner's patents at that time.

In 2005, BorgWarner obtained a European patent based on the same application that matured into the Patents-in-Suit. In May of 2006, Honeywell filed an opposition to BorgWarner's European patent. *See* Notice of Opposition to a European Patent - EP 1,363,028, a true and correct copy of which is attached hereto as **Exhibit A**. In that opposition, Honeywell again cited the SAE Article as prior art to BorgWarner's claims. *See* Enclosure to Notice of Opposition to a European Patent - EP 1,363,028 at 1, a true and correct copy of which is attached hereto as **Exhibit B**. In addition to the SAE Article, Honeywell also cited U.S. Patent No. 5,124,105 (the "Broughton" patent), as well as three other references cited in the U.S. reexaminations. *Id.* Despite having knowledge of these references and having analyzed and drafted arguments applying the references to claims similar to those of the Patents-in-Suit, Honeywell again chose not to request reexamination of the Patents-in-Suit in 2006.

Having been made aware of Honeywell's prior art claims in 2005, BorgWarner continued its attempts to negotiate a license with Honeywell through

Patents-in-Suit are hereinafter referred to as "Cast Ti Wheels".

the first part of 2006. When those negotiations fell through, it became evident that BorgWarner would have to enforce its intellectual property rights. In the mean time, BorgWarner also began investigating the alleged third party prior art activities. BorgWarner went so far as to contact the third party and negotiate the opportunity to view and analyze the alleged third party prior art. *See* PLAINTIFFS' RESPONSES AND OBJECTIONS TO HONEYWELL INTERNATIONAL, INC.'S FIRST SET OF INTERROGATORIES (Apr. 21, 2008), an excerpt of which is attached hereto as **Exhibit C**. After BorgWarner's diligence and investigation confirmed the validity of the Patents-in-Suit, BorgWarner directed its energy towards enforcing those patents and, resultingly, filed the instant lawsuit on May 25, 2007.

**B.     Despite Honeywell's Dilatory Efforts, this Lawsuit is at an Advanced Stage and Substantial Discovery has been Completed.**

Since suit was filed in early 2007, BorgWarner has attempted to progress this case towards a timely resolution. Honeywell resisted from the start. To wit, Honeywell's first course of action was to seek not one, but two extensions of time to file its answer, pushing Honeywell's final answer date to late July 2007. (Doc Nos. 7, 20). The same day the Honeywell answered BorgWarner's complaint, it also filed a motion to transfer this case from this Court to the Central District of California. (Doc. No. 26). Briefing on Honeywell's dubious motion and its subsequent objection to the magistrate's recommendation that the motion be

denied finally concluded in November 2007, (Doc. No. 40), and Honeywell's request was rejected by the Court on February 11, 2008. (Doc. No. 45).

Having expended significant time and resources countering Honeywell's initial attempts to forestall the progression of this lawsuit in this Court, BorgWarner immediately pressed forward with discovery. By the end of April 2008, Honeywell and BorgWarner exchanged responses to Requests for Production and Interrogatories—written discovery going not only to claim construction issues, but also touching on nearly every other facet of this lawsuit. Further, BorgWarner has initiated third party discovery by serving subpoenas for documents, depositions, and a site inspection on various vendors that supply tools and castings to Honeywell. To date BorgWarner has produced over 125,000 pages of responsive documents to Honeywell, representing the vast majority of its relevant documents and a tremendous expenditure of time and money by BorgWarner. In yet another display of its intent to delay the progress of this lawsuit, Honeywell has sought repeated extensions of its time to produce documents to BorgWarner, and despite BorgWarner's granting of those extensions, Honeywell has produced only 3700 pages to date. Moreover, BorgWarner has already produced two of its claim construction experts for deposition.

Not only has BorgWarner expended substantial resources on getting discovery and documents to Honeywell, but the parties have also completed claim construction briefing, and the claim construction hearing is tentatively scheduled to

take place in less than a month. *See* PRETRIAL ORDER AND CASE MANAGEMENT PLAN (Doc. No. 47) at § II(A)(7). After the Court issues its order on claim construction, the parties will then complete discovery within 120 days. *Id.* at § III(G).

Now, with these deadlines looming and such a large majority of discovery completed, Honeywell has decided to finally request a reexamination of BorgWarner's patents and a stay of this case. Honeywell's requests, under the guise of judicial economy and efficiency, are based essentially on the same art it cited in 2005 and 2006. As shown below, however, Honeywell's untimely requests will do nothing but add years to this already advanced litigation, and will not serve the aims of judicial economy or efficiency, but will only tactically advantage Honeywell and unduly prejudice BorgWarner.

### III. <u>Arguments and Authorities</u>

The determination of whether to grant a stay of litigation pending reexamination proceedings by the Patent Office is soundly within the discretion of the trial court. *Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 603 (Fed. Cir. 1985); *KLA-Tencor Corp. v. Nanometrics, Inc., C.A.*, No. 05-03116 JSW, 2006 WL 708661, at *2 (N.D. Cal. 2006) (citing *Tap Pharm. Prods. Inc. v. Atrix Labs. Inc.,* 70 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 2004)). However, courts are not *required* to stay judicial resolution in view of reexamination proceedings. *Viskase Corp. v. Am. Nat. Can Co.,* 261 F.3d 1316, 1328 (Fed. Cir. 2001). When determining

whether to grant a stay in light of a pending reexamination, courts consider several factors: (1) the stage of the litigation, including whether discovery is or will be almost completed and whether the matter has been marked for trial; (2) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; and (3) whether a stay will simplify the issues in question and streamline the trial, thereby reducing the burden of litigation on the parties and on the court. *See, e.g., KLA-Tencor*, 2006 WL 708661 at *2. As set forth below, Honeywell's request for a stay comes at an advanced stage in this litigation, will unduly prejudice BorgWarner, and will not simplify or streamline the issues being litigated in this case. Therefore, the Court should deny Honeywell's Motion for Stay.

**A.     This Litigation is at an Advanced Stage, with a Substantial Portion of Discovery Completed and Claim Construction Imminent.**

The first factor to be considered in determining whether a stay pending reexamination is proper is the stage of the litigation. *KLA-Tencor*, 2006 WL 708661 at *2. A stay pending reexamination is not justified where substantial discovery has been completed by the parties. *See Output Tech. Corp. v. Dataproducts Corp.*, 22 U.S.P.Q.2d 1072, 1074 (W.D. Wash. 1991) (finding stay not justified where discovery was "well underway" and was scheduled for completion five months after reexamination was granted); *see also Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 407 (W.D.N.Y. 1999) (finding litigation too advanced for stay where "substantial discovery" had taken place). As noted by the

district court in *Xerox*, "[p]arties should not be permitted to abuse the reexamination process by applying for reexamination after protracted, expensive discovery or trial preparation." *Xerox*, 69 F. Supp. 2d at 407 (internal quotations omitted).

Contrary to Honeywell's assertion in its Motion for Stay, a significant portion of the fact discovery in this lawsuit has been completed. The parties have exchanged and answered requests for production and interrogatories relating to every aspect of this litigation, BorgWarner has served subpoenas and is currently pursuing third party discovery of Honeywell's vendors, BorgWarner has produced documents responsive to nearly all of Honeywell's requests for production (only a small portion of which relate to claim construction),[2] and depositions of BorgWarner's claim construction experts have been completed. Moreover, with the claim construction hearing and order drawing near, the time left for discovery in this case is extremely limited. *See* PRETRIAL ORDER AND CASE MANAGEMENT PLAN (Doc. No. 47) at § III(G) (closing fact discovery 120 days after issuance of claim construction order). Therefore, because the parties have already engaged in protracted, expensive discovery, this case falls squarely within the admonition of

---

[2] As set forth above, while BorgWarner has produced over 125,000 pages of documents responsive to Honeywell's requests, consistent with its other dilatory tactics Honeywell has delayed in producing its documents to BorgWarner and has produced only a little over 3,700 pages thus far.

*Xerox* and Honeywell should not be granted a stay at this advanced stage of litigation.

In light the significant discovery already completed by BorgWarner and Honeywell, this lawsuit is readily distinguishable from those stayed in the opinions cited in the Motion. For instance, in *Cornerstone Biopharma v. Vision Pharma*, the defendant's motion for stay was filed prior to the parties conducting any discovery at all. *Cornerstone Biopharma, Inc. v. Vision Pharma, LLC*, No. 5:07-CV-389-F at 3 (E.D.N.C. Feb. 15, 2008); *Sorensen v. Digital Networks N. Am. Inc.*, No. C 07-05568 JSW, 2008 WL 152179, at *2 (N.D. Cal. Jan. 16, 2008) (granting stay where discovery had not begun and the defendant had not yet answered the lawsuit). In addition, the only case cited in the Motion where a stay was granted after significant discovery, *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.*, No. 85 C 7565, 1987 WL 6314 (N.D. Ill. Feb. 2, 1987) is likewise inapposite. In *Emhart*, the defendant learned during late depositions of new facts which enabled it to seek reexamination of the contested patents. *Id.* at *3. Here, however, it is beyond dispute that Honeywell knew about its primary reexamination reference for almost three years before requesting reexamination and this stay. Consequently, Honeywell's reliance on these cases is unavailing, and the Court should find that this factor weighs against staying this lawsuit.

**B.  The Untimely, Lengthy Stay Requested by Honeywell Would Unduly Prejudice and Tactically Disadvantage BorgWarner.**

Another factor to be weighed in determining if a stay pending reexamination is appropriate is whether the requested stay would visit undue prejudice or tactically disadvantage the non-moving party.  *KLA-Tencor*, 2006 WL 708661, at *2.  In the instant matter, Honeywell's untimely request for a stay in this lawsuit, which promises to delay trial of this matter for more than two years, will unduly prejudice and disadvantage BorgWarner.

**1.  A Stay Will Unduly Prejudice and Disadvantage BorgWarner, and Provide an Unfair Tactical and Commercial Advantage to Honeywell.**

Reexaminations last an average of 24 months, and the instant reexaminations were just recently granted.  *Ex Parte* Reexamination Filing Data – December 31, 2007, United States Patent and Trademark Office at 2, a true and correct copy of which is attached hereto as **Exhibit D**.  If the Patent Office makes "any decision adverse to the patentability of any original or proposed amended or new claim" of the Patents-in-Suit, BorgWarner would have the right to appeal that decision to the Patent Office Board of Patent Appeals and Interferences and then to the Federal Circuit. 35 U.S.C. § 306. Appeal of any determination by the Patent Office potentially adds years to the process.  Therefore, staying this lawsuit during reexamination could extend the time to trial by many years.  During this extended delay that would result from a stay, several things are likely to happen.  First and

foremost, Honeywell will continue to infringe the claims of the asserted patents, thus not only causing direct monetary damage to BorgWarner, but also impairing BorgWarner's ability to enforce its patents against others. *See Itron, Inc. v. Benghiat*, No. Civ.99-201 (JRT/FLN), 2003 WL 22037710, at *13 (D. Minn. Aug. 29, 2003) (holding that "permitting [the alleged infringer] to continue infringing at a non-negotiable royalty rate throughout the appeals process harms [the patent holder] in the first instance, and it causes further harm by likely impinging [the patent holder's] negotiating position with other infringers or potential licensees").

Although the Patent Office will either grant or deny its requests for reexamination within "three months," that preliminary ruling is merely the beginning of a two year or longer proceeding. The Court should not stay the proceedings because, unless enjoined, Honeywell's activities will continue to harm BorgWarner. *See Cheng v. Sighting Sys. Instruments*, *LLC*, No. 1:06-cv-2326, 2007 WL 1341119, at *2 (N.D. Ga. May 3, 2007); *Xerox*, 69 F. Supp. 2d at 407 (finding prejudice when a defendant requests a lengthy delay while continuing its allegedly infringing activities). The requested stay would prolong these proceedings, delay any injunction that may be awarded to BorgWarner, and cause additional irreparable harm to BorgWarner.

Additionally, courts have found patentees are particularly prejudiced by stays when infringing products compete directly with the patentee's embodiments of the patents in suit. *E.g., Purechoice, Inc. v. Honeywell Int'l, Inc.*, No. 2:06-CV-

244 (TJW), 2007 WL 1189844, at *1 (E.D. Tex. April 20, 2007). For example, in *Purechoice*, the district court found that the plaintiff, Purechoice, would be prejudiced and tactically disadvantaged by a stay where "PureChoice and Honeywell are direct competitors" and "the PTO has not provided any definitive guidance on the length of time required for reexamination." *Id.* at *1.

Moreover, if litigation is extended by a number of years, it is more likely that the patent rights in dispute will lose value as technology advances and market conditions change. *Remington Arm Co. v. Modern Muzzleloading, Inc.*, No. 2:97CV00660, 1998 WL 1037920, at *2 (M.D.N.C. Dec. 17, 1998). Consequently, the injunction against infringement would lose value, further prejudicing the plaintiff. *Id.*

Because the relevant market for the cast titanium compressor wheels is narrow, with only a small number of suppliers, infringing sales by BorgWarner's primary competitor, Honeywell, are particularly harmful. Indeed, Courts have recognized that plaintiffs suffer more prejudice from a stay when they seek lost profits, as BorgWarner does here, as opposed to only a reasonable royalty. *Ricoh Co. v. Aeroflex Inc.*, Nos. C03-04669 MJJ, C03-02289 MJJ, 2006 WL 3708069, at *3 (N.D. Cal. Dec. 14, 2006). BorgWarner and Honeywell directly compete in the marketplace. Honeywell's illegal sales detract from BorgWarner's market share and deplete its present customer base. If a stay is granted, BorgWarner may have to wait for two years and likely longer to litigate its patents, while Honeywell

continues to make a concerted and serious bid for its market share. The risk here is particularly severe since automotive companies typically sign long-term contracts with suppliers like BorgWarner and Honeywell. Any contract that Honeywell wins because it is using BorgWarner's patented design and manufacturing techniques may hurt BorgWarner for several years at a time. *See* ABOUT PUBLISHING GROUP, THE GLOBAL MARKET FOR AUTOMOTIVE SUPERCHARGERS AND TURBOCHARGERS: 2007 EDITION, at Table of Contents (2007), *available at* http://www.researchandmarkets.com/reportinfo.asp?report_id=563129&t=t&cat_id , a printout of which is attached hereto as **Exhibit E**. For all these reasons, the multi-year delay caused by a stay during reexamination would unduly prejudice and tactically disadvantage Borg Warner.

> 2. **Honeywell's Reexamination Application and Request for Stay Constitute an Abuse of Process and a Stay Would Unduly Prejudice BorgWarner.**

Honeywell suggests that because issuance of stays was anticipated by the reexamination statute the delay during reexamination cannot be the grounds for a finding of prejudice. *See* MOTION FOR STAY at 17-19. While Honeywell's assertion may be true absent other circumstances, where, as in the instant case, the reexamination and stay are sought ***for the purpose of delay and tactical advantage***, then undue prejudice should be found. *E.g.*, *Xerox*, 69 F. Supp. 2d at 407 (finding prejudice from reexamination delay where there was "evidence that the movant's request for a stay [had] at least some dilatory tactical motive behind

it"). Allowing such use of the reexamination process to obtain a tactical advantage in litigation amounts to abuse of the process. *Id.*; *Lectrolarm Custom Services, Inc. v. Vicon Indus. Inc.*, No. 03-2330-MA/A, 2005 WL 2175436, at *5.

As set forth above, Honeywell has been aware of many of the references cited in its reexamination application for years and filed a similar action against a European counterpart patent to the Patents-in-Suit over two years ago. There is no excuse for Honeywell having waited until the eve of claim construction, after the parties had expended substantial time and resources in discovery, to file its reexamination requests. Courts considering similar circumstances have almost universally found such behavior to constitute abuse of process and refused to grant stays in such cases. *Xerox*, 69 F. Supp. 2d at 407 (ruling that stay would unduly prejudice plaintiff and finding dilatory motive for request where defendant knew of prior art for seven months before filing application for reexamination); *Lectrolarm*, 2005 WL 2175436, at *5 (finding abuse of process and denying stay where defendant knew of prior art more than four years before filing reexamination request); *Remington*, No. 2:97CV00660, at *3 (M.D.N.C. Dec. 17, 1998) (finding undue prejudice and refusing to grant stay where defendant failed to file reexamination request for 3 months after it learned of the prior art). Like the movants in those cases, Honeywell delayed filing its request for reexamination so as to gain a tactical advantage in this litigation. Therefore, this Court should deny

Honeywell's attempt to abuse the reexamination process to gain an unfair advantage in this litigation and reject its request for a stay.

**C.  A Stay is Unlikely to Simplify the Issues and Would Waste Judicial Resources**

The third factor to be weighed in determining if a stay pending reexamination is appropriate is whether a stay will simplify the issues in question and streamline the trial, thereby reducing the burden of litigation on the parties and on the court.  *See*, *e.g.*, *KLA-Tencor*, 2006 WL 708661 at *2.  Statistically speaking, however, the reexaminations of the Patents-in-Suit are more likely to confirm all of the claims than invalidate all of the claims.  Therefore, the reexaminations are unlikely to make this case go away.  Moreover, Honeywell had a choice in the type of reexamination it filed and chose *ex parte* reexamination, a form least likely to simplify the issues.  Honeywell should not be rewarded for its dilatory tactics.

**1.  The Reexaminations Are Unlikely to Dispose of All Potential Infringement Claims, and Even if a Stay Is Granted, This Court Will Almost Assuredly Be Needed.**

If a stay if granted, and reexamination does not dispose of all of the potential infringement claims, the Parties will likely be back before this Court.  The chances of the reexaminations disposing of all of the potential infringement claims, however, is slim.

Honeywell overstates the importance of the Patent Office's granting reexamination of the Patents-in-Suit. The Patent Office's granting reexamination is so routine that it does not create an inference that the patent might be invalidated or substantially amended as a result of the asserted prior art. *See Hoechst Celanese Corp. v. BP Chems. Ltd*., 78 F.3d 1575, 1584 (Fed. Cir. 1996) ("grant of a request for reexamination, although surely evidence that the criterion for reexamination has been met . . . does not establish a likelihood of patent invalidity."). Practically speaking, the bar to convincing the Patent Office of a substantial new question of patentability is low. The Patent Office grants 92% of all requests for *ex parte* reexamination. Ex. D at 1.

Despite almost always finding a substantial new question of patentability, the Patent Office rarely invalidates patents challenged by *ex parte* reexamination. Only 12% of patents challenged by third party initiated *ex parte* reexaminations result in all claims being canceled. *Id*. Compare this to 29% of the patents challenged by third party initiated *ex parte* reexaminations resulting in ***all*** original claims confirmed, unamended. *Id*. In other words, a patent is more than twice as likely to issue from *ex parte* reexamination completely unchanged than it is for all of its claims to be canceled.

Honeywell would like the Court to believe that the asserted claims will be substantially different after reexamination, and that the reexaminations will make this case will go away or substantially simplify the issues. Admittedly, many

reexaminations result in at least one amended claim. However, those that result in fewer than all claims amended or canceled, logically include claims that remain unchanged. Also, even if a claim is amended, it may not necessarily be amended so as to clearly preclude infringement. There are a many claims at issue in this suit, and each and every claim that Honeywell allegedly infringes would have to be canceled or amended so as to clearly preclude infringement for this case to go away. Thus, even if a stay is granted, the parties are likely to end up back before this Court after the reexamination is over.

Consider also, the argument that reexamination may simplify the case if even one of the infringed claims of the Patents-in-Suit are cancelled or amended can be made in every patent case in which a request for reexamination is filed. To grant a stay based on this argument, however, would not promote the efficient and timely resolution of patent cases, and would invite parties to unilaterally derail timely patent case resolution by seeking reexamination.

## 2. The Reexaminations Address Only a Fraction of the Issues in Question.

Reexamination, in general, is not a judicially efficient manner of reaching resolution when the parties are on track for timely trial. Reexamination will consider only a small number of the issues in this case, and will leave many left over for the Court. Reexamination will not address any of BorgWarner's claims of infringement, willfulness, or whether this is an exceptional case, and will only take

into account a fraction Honeywell's asserted defenses. The Patent Office only considers prior art in the form of patents or printed publications during a reexamination. 37 C.F.R. § 1.552(a). However, in its Amended Preliminary Invalidity Contentions, Honeywell relies on numerous allegations of prior art uses and sales, as well as arguments for indefiniteness, written description and enablement under 35 U.S.C. § 112. All of these arguments cannot be considered by the Patent Office in reexamination, and will be left over for the Court. 37 C.F.R. § 1.552(c), M.P.E.P. § 2258IB. In addition, Honeywell asserts 44 patents and printed publications in its Amended Preliminary Invalidity Contentions, yet supplied only 12 to the Patent Office in connection with the reexaminations. Therefore, in the likely instance that the parties are back before this Court, there will be many issues remaining following the reexamination.

Moreover, Honeywell had two types of reexamination available to it, but chose the course least likely to promote judicial economy. Honeywell filed the *ex parte* form of reexamination, which permits the patent challenger to repeat all of the same arguments its used (unsuccessfully) in reexamination when the litigation resumes in district court. Honeywell could have chosen to file an *inter partes* reexamination,[3] a type of reexamination that allows the patent challenger to substantively participate throughout the reexamination, but at the price of being

statutorily estopped from asserting the same prior art arguments later in the district court. Honeywell deliberately chose the course that preserves its ability to bring the very same arguments and same prior art presented during reexamination to this Court at a later date if they are unhappy with the Patent Office's decision. Had Honeywell filed *inter partes* reexamination and the reexamination run its course, it would be estopped from later asserting invalidity on any ground which they could have raised during the *inter partes* reexamination. 35 U.S.C. § 315(c). Here, Honeywell does not believe in its prior art (or its reexamination) enough to take its one shot in the Patent Office, but instead wants to have the ability to relitigate all of its prior art arguments in the district court if it loses in the Patent Office.

### 3. A Stay Pending Reexamination Is Almost Certain to Delay Resolution, and the Likelihood of Duplication if a Stay Is Not Granted Is Low.

Although no trial date has been set in this case, if the case is allowed to continue its course, trial will likely happen in mid 2009. *See*, Pretrial Order and Case Management Plan. Reexamination and related proceedings, on the other hand, will go on for years. Pendency of an *ex parte* reexamination is, on average, 24 months. Ex. D at 2. The present reexaminations were just granted, so the 24 month average pendency has only just begun. Additionally, if the Patent Office makes "any decision adverse to the patentability of any original or proposed

---

[3] Any person other than the patent owner or its privies may file a request for inter partes reexamination of any claim of a patent filed on or after November 29, 1999.

amended or new claim" of the Patents-in-Suit, BorgWarner would have the right to appeal that decision to the Patent Office Board of Patent Appeals and Interferences and then to the Federal Circuit. 35 U.S.C. § 306. Such appeals would add to the time to resolution. Thus, what little chance at resolution is provided by the reexaminations is a long way off. In contrast, resolution through this Court of all the issues less than a year away.

If all of the issues are resolved by this Court before the reexamination concludes, there is little chance of duplicated efforts. As discussed above, a patent is more than twice as likely to issue from *ex parte* reexamination completely unchanged than it is for all claims to be canceled. Additionally, there are many claims at issue in this case. *See* PLAINTIFFS BORGWARNER INC.'S AND BORGWARNER TURBO SYSTEMS INC.'S INITIAL DISCLOSURES OF ASSERTED CLAIMS AND PRELIMINARY INFRINGEMENT CONTENTIONS (Oct. 23, 2007), a true and correct copy of which is attached hereto as **Exhibit F**. Unless each and every claim that this Court finds infringed is also canceled or substantively amended in the reexamination, the Court's verdict of infringement would stand. *See, e.g.*, *Tennant Co. v. Hako Minuteman, Inc.*, 878 F.2d 1413, 1417 (Fed. Cir. 1989) (holding that "[c]laims amended during reexamination are entitled to the date of the original patent if they are without substantive change or are legally 'identical' to the claims in the original patent"). In other words, a judgment of infringement from this

---

37 C.F.R. § 1.913. The first filed of the Patents-in-Suit was filed June 6, 2001.

Court would continue to stand and could not be challenged by Honeywell based upon the unamended (or not substantively amended) claims. In addition, even if all claims were substantively amended, Honeywell would still not be entitled to a complete "do-over" of the judgment in this Court. Claims can only narrowed in reexamination, 35 U.S.C. § 305, and thus at most terms might be added to a claim. As a result, there will be little basis to disturb the Court's prior legal rulings or the jury's factual findings on most issues.

Finally, what small chance of duplicated efforts there exists is Honeywell's own doing. Honeywell could have made its invalidity case to this Court alone, but instead chose to present a more limited invalidity case to the Patent Office in the reexaminations. Additionally, despite Honeywell having known of patents and printed publication cited in the reexamination since 2005 and 2006, and Honeywell having filed an action similar to a reexamination against a European counterpart to the Patents-in-Suit in 2006, Honeywell chose to file its reexaminations well into the present suit. Honeywell should not be rewarded for its delay.

Accordingly, for the reasons above, the Court should not further Honeywell's attempt to derail an efficient, timely resolution to this matter, and should deny Honeywell's request for a stay.

## IV.  Conclusion

As shown above, Honeywell's request for a stay of this litigation pending reexamination, made at such an advanced stage in the case, does not serve the interests of judicial economy or to streamline this case for trial.  To the contrary, the only effect of staying this lawsuit during reexamination would be to prejudice BorgWarner and provide a significant tactical advantage to Honeywell by delaying trial for up to four years.  Consequently, BorgWarner respectfully requests that this Court deny Honeywell's Motion to Stay and allow these proceedings to continue during reexamination.

Dated:  June 13, 2008

By: s/ Larry McDevitt
Larry S. McDevitt
State Bar No. 5032
THE VAN WINKLE LAW FIRM
11 North Market Street
Asheville, NC 28801
Telephone: (828) 258-2991
Facsimile:  (828) 255-0255
lmcdevitt@vwlawfirm.com


OF COUNSEL:

FISH & RICHARDSON P.C.

David M. Barkan
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5003

Joshua A. Griswold
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214) 747-5070
Facsimile:  (214) 747-2091

Ralph A. Phillips
1425 K Street, N.W., Suite 1100
Washington, DC 20005
Telephone: (202) 783-5070
Facsimile:  (202) 783-2331


Attorneys for Plaintiffs
BORGWARNER INC. AND
BORGWARNER TURBO SYSTEMS
INC.

# CERTIFICATE OF SERVICE

I certify that on June 13, 2008, I electronically filed the foregoing

PLAINTIFFS' RESPONSE TO HONEYWELL INTERNATIONAL, INC.'S

MOTION TO STAY PROCEEDING with the Clerk of the Court using the

CM/ECF system which will send email notification of such filing to the following

counsel:

| | |
|---|---|
| Forrest A. Ferrell | forrest.ferrell@sigmonclark.net |
| | amanda.honeycutt@sigmonclark.net, angela.mayo@sigmonclark.net |
| Philip Chen | pchen@kirkland.com |
| Marc H. Cohen | mcohen@kirkland.com jbonilla@kirkland.com |
| Robert G. Krupka | bkrupka@kirkland.com |

THIS the 13th day of June, 2008.

s/ Larry McDevitt
Larry McDevitt